## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re Hearing Help Express, Inc., | ) | Bankruptcy No. 14-82161 |
| | ) | |
| Debtor. | ) | Adversary No. 16-96043 |
| Better Hearing, LLC, | ) | |
| Plaintiff, | ) | Chapter 11 |
| v. | ) | |
| James E. Hovis, | ) | Judge Lynch |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Defendant James E. Hovis seeks to dismiss the adversary complaint brought against him by creditor Better Hearing, LLC, purportedly on behalf of the Chapter 11 bankruptcy estate. Because Better Hearing did not obtain timely authorization to commence this adversary proceeding, Mr. Hovis's motion will be granted. The Reorganized Debtor Hearing Help Express, Inc. has failed to demonstrate that Better Hearing, LLC's bringing this action in its name rather than the correct party was the result of an understandable mistake permitting substitution or joinder of the Reorganized Debtor as plaintiff under Fed. R. Bankr. P. 7017. Accordingly, the Reorganized Debtor's motion to substitute as plaintiff in the pending adversary proceeding must be denied.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Hearing Help Express, Inc., described in both its and Better Hearing, LLC's disclosure statements as a "mail order company marketing hearing aids, batteries and related accessories directly to senior citizens," filed for protection under Chapter 11 of the Bankruptcy Code on July 14, 2014.[2] As of the petition date, the Debtor was managed by chief executive officer James E. Hovis (the Defendant in this proceeding) and president Laura C. Stuebing. (HHE Disclosure Statement, Case No. 14-bk-82161, ECF No. 381.) As of the petition date, the Debtor was an Illinois C-Corporation, with around 90 shareholders. Approximately 52.1% of the shares were owned directly or indirectly by James E. Hovis and his relatives. In Schedule B to its petition, the Debtor disclosed that as of the petition date the Debtor was owed $5,637,282 in "Loans to Laura C. Stuebing and James E. Hovis." The Debtor's Statement of Financial Affairs stated that between July 19, 2013 and July 4, 2014 it paid a total of

---

[1] To the extent this opinion adjudicates the Motion to Dismiss pursuant to Rule 12(b)(6), the Court relies only on the factual allegations in the complaint, accepting such allegations as true and drawing all permissible inferences in the Plaintiff's favor. *See, e.g, Alamo v. Bliss*, 864 F.3d 541, 548-49 (7th Cir. July 20, 2017). As discussed below, although asserting claims which may only be brought by a trustee or debtor-in-possession, the Plaintiff Better Hearing, LLC has not alleged that it is the trustee or debtor-in-possession or that it has been granted authority to pursue the claims. However, in the Plaintiff's and the Reorganized Debtor's joint response to the motion to dismiss and reply in support of the motion to substitute as plaintiff, the Plaintiff seeks "derivative standing" or retroactive authority to pursue the claims or to permit the Reorganized Debtor to join and substitute as party in interest, citing to both the history of and filings in the bankruptcy case and the adversary proceeding. In this context, the Court takes judicial notice of the dockets of both the adversary proceeding and the underlying bankruptcy case.

[2] Hearing Help Express, Inc.'s Third Amended Disclosure Statement ("HHE Disclosure Statement") (Case No. 14-bk-82161, ECF No. 381) and Better Hearing, LLC's Fourth Amended Disclosure Statement ("Better Hearing Disclosure Statement") (Case No. 14-bk-82161, ECF No. 394). The description of the parties and their pre-petition relationship to each other is intended to provide context to the reader, not as findings of fact, and is drawn primarily from the HHE Disclosure Statement and the Better Hearing Disclosure Statement, each approved by this Court on July 26, 2016 (Case No. 14-bk-82161, ECF No. 398).

$201,675.30 to James E. Hovis as "Salary payments to insiders" and $4,683 to James

E. Hovis between May 8, 2014 and June 19, 2014 as payments "found ... in file with

payments to vendors." (ECF No. 27.) The Statement of Financial Affairs also listed

"net payments for month" between July 1, 2013 and July 1, 2014 by the Debtor to

Hovis that ranged from $34,427 down to $(179,084) per month, accompanied by the

entry: "Sum: Hovis reduced loan by $112,437."

The Debtor's Schedule D listed Plaintiff Better Hearing, LLC as having an

undisputed fully secured claim of $2,300,054.00. The Debtor, however, did not object

when Better Hearing, LLC filed a proof of claim on August 29, 2014, that asserted a

fully secured claim of $2,401,635. (Claim No. 8-1.)[3] On November 24, 2014, Better

Hearing, LLC filed an additional proof of claim to assert a fully secured claim of

$75,851.14. Better Hearing claimed to be the assignee of Resource Bank, N.A.,

attaching copies of a July 2009 promissory note and security documents in favor of

Resource Bank, N.A. and November 2014 loan assignment documents from Resource

Bank to Better Hearing. (Claim No. 14-1.) The Debtor failed to propose a plan of

reorganization before the exclusive period to do so expired on November 11, 2014, and

instead filed its initial proposed plan a little over a year later, on December 7, 2015.

Creditor Better Hearing, LLC filed its proposed competing plan on March 18, 2016.

Each plan proponent amended its respective proposed plan several times. After a

---

[3] According to the HHE Disclosure Statement, Better Hearing, LLC was owned and formed by Thomas
H. Roberts, III, a former investor in the Debtor who loaned $2.5 million to the Debtor on a secured
basis in September 2012. It asserts that Roberts subsequently transferred the note and security
interest, together with an additional February 2013 secured note from the Debtor, to Better Hearing.
That description is consistent with the documents attached to Better Hearing's proof of claim, which
includes copies of promissory notes and security documents and a general assignment of loan
documents dated January 22, 2014 from the Thomas H. Roberts III Trust to Better Hearing LLC.

contested confirmation hearing, this Court confirmed Better Hearing's Second Modified Plan and denied confirmation of the Debtor's Third Modified Plan on October 17, 2016.

The confirmed plan and confirmation order, among other things, extinguished preconfirmation equity interests in the Debtor. Under the confirmed plan the existing officers and board were "deemed to have resigned" and a new board of directors was designated. Eighty percent of the common stock interests in the reorganized Debtor were issued to Better Hearing, LLC with 20% to I-Management, LLC. (ECF No. 393 ¶¶ 4.3, 4.5, 5.1.) Pursuant to the confirmed plan, the Reorganized Debtor was "vested with all of the Property of the Estate (including all Avoidance Actions, Causes of Action and the Hovis Litigation), free and clear of all Claims, Liens and Interests." (ECF No. 393 ¶5.3.) The "Hovis Litigation" was defined in the plan to encompass "any Causes of Action initiated by Reorganized Debtor within ninety (90) days Effective Date [sic] against Jim Hovis, Catherin Hovis [sic], Laura Steubing or any other Insiders and Luxis International, Inc. (including any insurance proceeds) which may include, without limitation, causes of action for breach of fiduciary duty as well as actions to recover any distributions made to or any unpaid loans made to Jim Hovis or other Insiders which have not been repaid to Debtor." (ECF No. 393, ¶1.55.)

On July 13, 2016, before either of the proposed plans was confirmed and one day shy of the second anniversary of the petition date, Better Hearing, LLC filed this adversary complaint against Mr. Hovis without seeking leave of the court "on behalf

of itself and the interests of the bankruptcy estate of Hearing Help Express, Inc."

Count I of the complaint seeks to avoid the "Transfers" to James E. Hovis listed in

the Debtor's Statement of Financial Affairs "as fraudulent under Section 548 and/or

740 ILCS Section 160, as incorporated by Section 544 of the Bankruptcy Code." In

Count II Better Hearing asserts a contract claim, alleging that Mr. Hovis owes the

Debtor $5,637,282 to demand damages as "a breach of contract with the Debtor" for

Mr. Hovis's failure to repay such sum. Count III objects to any claim that Mr. Hovis

may assert against the bankruptcy estate unless he turns over the payment or value

of all payments avoidable under Sections 544, 547 or 548 of the Bankruptcy Code.

Mr. Hovis seeks to dismiss the Adversary Complaint pursuant to Fed. R. Civ.

P. 12(b)(6), arguing that the powers to avoid a transfer under Sections 544, 548 and

550 of the Bankruptcy Code are vested exclusively in the trustee, and that as a single

creditor Better Hearing lacks standing to bring the complaint. (ECF No. 6.) In the

alternative, Mr. Hovis seeks to dismiss the complaint for failure to plead with

sufficient specificity under Fed. R. Civ. P. 8 or 9(b). In response to the motion and

after plan confirmation, the reorganized debtor Hearing Help Express, Inc., now

represented by the same counsel as Better Hearing,[4] moves to substitute as the real

party in interest pursuant to Fed. R. Civ. P. 17(a)(3), and also requests leave to amend

the complaint to provide more specificity in its factual allegations. (ECF No. 13.) In

his response to the Reorganized Debtor's motion, Mr. Hovis argues that because the

initial plaintiff did not have proper standing this Court lacked jurisdiction over the

---

[4] Mr. Hovis has been represented by his personal attorneys, Jocelyn Koch and Bradley Koch, throughout the pendency of the case.

matter. Further, Mr. Hovis contends that substitution may not be granted under Rule 17 because the two-year statute of limitations for an avoidance action had already expired before the Plaintiff filed its request to substitute. (ECF No. 14.)

Better Hearing and Hearing Help filed a joint reply in support of the motion to substitute and response in opposition to the dismissal motion. (ECF No. 28.) In it they argue that the case involves an issue of prudential standing only and not constitutional standing. Accordingly, they contend that the Court has jurisdiction to hear the matter and should find that Better Hearing had derivative standing to assert its claims. Addressing the substitution issue, Better Hearing and Hearing Help argue that substitution at this time should be allowed because Mr. Hovis, as a controlling party of the preconfirmation Debtor, led Better Hearing to believe that he would agree to a tolling agreement.

In support of the latter argument, Better Hearing attaches copies of two purported electronic communications between Russell Baker, one of Hearing Help's bankruptcy attorneys and Better Hearing's counsel James Morgan dated June and July 2016. The joint response does not include an affidavit or supplemental statement regarding the foundation for these e-mail communications. The first attachment appears to relate to a series of objections to Better Hearing's disclosure statement sent from the Debtor-in-Possession's counsel to Better Hearing's counsel on June 28, 2016.[5] In the joint reply/response, Better Hearing and the Reorganized

---

[5] ECF No. 28, Ex. A. Embedded within this e-mail appear to be the responses (or perhaps a description of the responses) of the Debtor-in-Possession's counsel typed into the original e-mail on June 29, 2016, and then replies of Better Hearing's counsel also typed into the original e-mail on June 29, 2016.

Debtor point the Court's attention to the portion of the purported e-mail in which the Debtor-in-Possession's counsel objects that "[i]t misstates that the HHE Plan releases the Hovis parties from all claims, including the repayment of the booked loan entries. The Plan, in fact, provides that the loans will be repaid as they are determined to be valid and enforceable (see p.22-23, Section VI)." According to the document, Better Hearing's counsel's responded, "[i]f no one sues Hovis before July 14th, the statute of limitations will have run on the Debtor's causes of action. I disagree that this is incorrect," to which the Debtor-in-Possession's counsel purportedly replied that "HHE maintains its objection. HHE will be proposing a Tolling Agreement to the Hovis Parties to toll any and all claims which HHE may have against them." Also attached to the joint response / reply is a copy of a purported e-mail from the Debtor-in-Possession's counsel to Better Hearing's counsel dated July 13, 2016 at 8:07 p.m. in which the Debtor-in-Possession's counsel purportedly states, "Attached is the draft tolling agreement. As discussed this draft is still subject to my review." (ECF No. 28, Ex. B.) No copy of any tolling agreement was attached to the joint response / reply filed with the Court, though the header of the copy of the purported e-mail suggests that an attachment was included with the transmitted e-mail.

Mr. Hovis replied to reiterate his argument that Better Hearing did not have standing to bring the complaint, that the court did not have jurisdiction over the matter, that substitution was not warranted and that the complaint lacked specificity. (ECF No. 30.)

Although the court offered the parties several opportunities to present

evidence in support of their positions, they declined to do so. Instead, at the July 12, 2017 status hearing, counsel for Better Hearing and the Reorganized Debtor stated on the record that "Better Hearing and the reorganized debtor are willing to waive any further evidentiary hearing and any further hearings on the matters and will stand on our papers." (Tr. July 12, 2017, ECF No. 48, 3:18-21.) During that hearing, counsel for Mr. Hovis asked for time to speak with her client before deciding "whether or not we will just stand on the record" or "whether a stipulation would be necessary." (Tr., ECF No. 48, 7:10-14.) Subsequently, at the continued status hearing on July 24, 2017, counsel for Mr. Hovis stated on the record her client's position that neither a stipulation nor evidentiary hearing was required and that he would rest on the pleadings.

## DISCUSSION

*Better Hearing Lacks Authority to Directly Bring the Actions Asserted.*

Count I of the Adversary Complaint seeks to avoid transfers "under Section 548 and/or 740 ILCS Section 160, as incorporated by Section 544 of the Bankruptcy Code." (Compl. ECF No. 1.) Count II presents a claim for damages for Mr. Hovis' alleged "breach of contract with the Debtor." Count III objects to all claims of Mr. Hovis pursuant to Section 502(d) of the Bankruptcy Code unless and until he repays to the estate the amount alleged to be $5,637,282.[6]

The bankruptcy trustee "has the sole responsibility to represent the estate by

---

[6] There is also a separate and currently pending objection to Mr. Hovis's proof of claim 71-1 filed June 16, 2017 by the Reorganized Debtor.

bringing actions on its behalf." *Levey v. Sys. Div., Inc.* (*In re Teknek, LLC*), 563 F.3d 639, 646 (7th Cir. 2009) (citing *Fisher v. Apostolou*, 155 F.3d 876, 879 (7th Cir. 1998); 11 U.S.C. § 323).[7] This means that the trustee "has creditor status under 11 U.S.C. §544 and is the only party that can sue to represent the interests of the creditors as a class." *Teknek*, 563 F.3d at 646 (citing *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1352 (7th Cir. 1987)). For a Chapter 11 case where – as here – a trustee has not been appointed, the debtor-in-possession, with limited exceptions, "shall have all the rights, other than the right to compensation under [Section 330,] and powers ... of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). Thus, while the "authority to collect the debtor's assets is vested exclusively in the trustee," *In re Perkins*, 902 F.2d 1254, 1257 (7th Cir. 1990) (Chapter 7 case), under the "reorganization chapters, the debtor-in-possession steps into the role of trustee

---

[7] Much of the parties' space in their papers and time at oral argument has been spent on the issue of "standing." But, as the Seventh Circuit has cautioned, the requirement of Fed. R. Civ. P. 17(a) that lawsuits be brought by and in the name of "the real party in interest" should "not be confused with the jurisdictional doctrine of standing." *Rawoof v. Taxor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008). The case-or-controversy requirement of Article III's requires a plaintiff to "demonstrate standing to sue in federal court by establishing (1) an injury in fact; (2) 'a causal connection between the injury and the conduct complained of'; and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, (1992)). Here, as a creditor of the Debtor and the bankruptcy estate, Better Hearing asserts an indirect injury in that the alleged transfer of funds to Mr. Hovis hindered its ability to collect its debt from the Debtor, which injury would be redressed by a favorable decision by recovering funds for the estate to distribute to creditors including Better Hearing. If "standing" is at issue here, it is a form of "prudential standing" that "a litigant cannot sue in federal court to enforce the rights of third parties." *Id.* "Some courts have described Rule 17's real-party-in-interest requirement as essentially a codification of this nonconstitutional, prudential limitation on standing," *id.*, though the Seventh Circuit has also suggested that the issue of a bankruptcy trustee's power to sue on behalf of the estate is better described as "the Trustee's 'authority' to act on behalf of [creditors], rather than his 'standing' to do so." *Grede v. Bank of New York Mellon*, 598 F.3d 899, 900 (7th Cir. 2010) (noting that "standing" generally refers to "injury, causation, and redressability" rather than to "whether Congress had authorized a trustee to pursue a given kind of action."). As discussed herein, whether characterized as statutory authorization or as prudential standing, Better Hearing has not shown that it may pursue the claims it asserts under the Bankruptcy Code on behalf of the bankruptcy estate, other creditors or on its own separate behalf.

9

and exercises concurrent authority to sue and be sued on behalf of the estate." *Cable
v. Ivy Tech State Coll.*, 200 F.3d 467 (7th Cir. 1999) (Chapter 13 case), *overruled on
other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967, n.1 (7th Cir. 2013).

The trustee "has no standing to bring 'personal' claims of creditors, which are
defined as those in which the claimant has been harmed and 'no other claimant or
creditor has an interest in the cause.'" *Teknek*, 563 F.3d at 646 (quoting *Fisher*, 155
F.3d at 879-80). The "distinction between 'general' and 'personal' claims ensures that
the trustee will be able to fulfill the purpose of the bankruptcy laws without allowing
the bankruptcy jurisdiction to swallow claims only tangentially related to the debtor."
*Id.* But here there can be little doubt that the claims asserted by Better Hearing in
the complaint are general and not personal.  In the Adversary Complaint, Better
Hearing expressly states that its complaint is brought on behalf of "the interests of
the bankruptcy estate."  This is especially clear in Count II, through which Better
Hearing seeks damages for breach of a contract to which it was not a party.  Better
Hearing asserts no direct relationship between it and Mr. Hovis or any right it would
have against Mr. Hovis other than through the Debtor.  Better Hearing further
alleges in Count II that Mr. Hovis "agreed to repay the Debtor ... but failed to do so,"
alleges that Mr. Hovis has "damaged the Debtor" and asserts "a breach of contract
with the Debtor."  Its Complaint does not allege that Better Hearing was directly
damaged by Mr. Hovis's alleged actions nor does it assert a "personal" claim for
breach of contract.

In Count I, Better Hearing seeks to avoid certain alleged transfers from the

Debtor to Mr. Hovis as fraudulent. But this claim, too, is the type of general claim that falls within the trustee or debtor-in-possession's sole authority. In the complaint Better Hearing states that it on its own "behalf and behalf of the estate of the Debtor, may avoid those Transfers as fraudulent under Section 548 and/or 740 ILCS Section 160, as incorporated by Section 544 of the Bankruptcy Code." (Complaint, ECF No. 1, ¶1.) Better Hearing therefore acknowledges that it is bringing the action at least in part on "behalf of the estate of the Debtor" generally. Moreover, the two statutory sections upon which Better Hearing relies, Bankruptcy Code Sections 548 and 544, both expressly authorize only the "trustee" to bring the action. 11 U.S.C. §§ 544, 548. While in its reply brief Better Hearing alleges that, as a creditor of the Debtor, it has a direct cause of action for fraudulent transfer against Mr. Hovis under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS, the Complaint is clear that the Plaintiff asserts such right "as incorporated by Section 544 of the Bankruptcy Code." (*Id.*) Moreover, even if state law creates a cause of action for creditors such as Better Hearing individually to avoid fraudulent transfers of assets which hinder the creditor's ability to collect a separate debt, because such cause of action is for "an injury common to all creditors" and "only in an indirect manner," it is one of "the kinds of claims that may be brought only by the trustee in bankruptcy." *Teknek,* 563 F.3d at 645-46. *See also Id.* at 646 (citing *Am. Nat'l Bank of Austin v. MortgageAmerica Corp.* (*In re MortgageAmerica Corp.*), 714 F.2d 1266, 1277 (5th Cir. 1983) (holding that a fraudulent transfer claim against a corporate debtor's control person belongs to the corporate debtor, not to specific creditors)).

_Better Hearing Has Not Been Granted Derivative Standing to Pursue the Claims_
_Asserted And Fails to Demonstrate Cause for Retroactive Authorization._

Apparently recognizing its lack of direct authority to pursue the claims, Better
Hearing seeks in its response to the motion to dismiss retroactive authorization to
derivatively pursue the estate's claims against Mr. Hovis.   The trustee or debtor-in-
possession may be divested of its exclusive authority to pursue claims on behalf of the
estate "only in narrow circumstances." _In re Perkins_, 902 F.2d 1254, 1258 (7th Cir.
1990).   An individual creditor or a creditor's committee may prosecute an action
originally vested in the trustee only when "(a) the trustee unjustifiably refuses a
demand to pursue the action; (b) the creditor establishes a colorable claim or cause of
action; and (c) the creditor seeks and obtains leave from the bankruptcy court to
prosecute the action for and in the name of the trustee." 902 F.2d at 1258 (citing _La._
_World Esposition v. Fed. Ins. Co._, 858 F.2d 233, 247 & n.14 (5th Cir. 1988); _Koch Ref._,
831 F.2d at 1346–47 & n.9).

However, Better Hearing has not demonstrated either that it made a demand
to pursue the action which the Debtor-in-Possession unjustifiably refused or that it
sought and obtained leave from this Court to prosecute the action for and in the name
of the trustee.   To the contrary, the record is clear and the Court takes judicial notice
that Better Hearing did not seek leave from this Court nor obtain such leave before
filing its complaint.

There is a split in authority over whether a bankruptcy court may retroactively

12

grant a creditor leave to prosecute an action for and in the name of the trustee after the complaint is already filed. The Fourth Circuit has concluded that the bankruptcy court does not possess such authority. *Scott v. Nat'l Century Fin. Enters., Inc.* (*In re Baltimore Emergency Servs. II, Corp.*), 432 F.3d 557 (4th Cir. 2005). In the Scott decision, the court concluded that granting retroactive leave to prosecute an action "would run contrary to the very purpose of imposing standing limitations: preventing bankruptcy proceedings from being sidetracked, even temporarily, by wasteful ancillary litigation." 432 F.3d at 563. The court noted that the cost of requiring approval in advance "even across a large number of cases, is small compared to the large-scale disruption that it prevents," and concluded that "[i]f derivative standing is permissible at all, requiring a formal determination of its propriety in a given case is the only way to prevent the creditor from unjustly hijacking the bankruptcy proceedings." *Id.*

In contrast, the Eighth Circuit has rejected a "*per se* rule forbidding retroactive grants of derivative standing," noting "the practice of numerous federal courts granting creditors retroactive permission (i.e. *nunc pro tunc* relief) to file a derivative adversary complaint." *PW Enters., Inc. v. North Dakota Racing Comm'n* (*In re: Racing Servs., Inc.*), 540 F.3d 892, 903 (8th Cir. 2008). While the court agreed "the better practice is for the [creditor] to secure approval before filing [its] complaint, we will not foreclose the ability of a court to make its approval of the [complaint] retroactive to the time of filing." 540 F.3d at 904 (quoting *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co.* (*In re Spaulding*

*Composites Co.*), 207 B.R. 899, 905 (9th Cir. B.A.P. 1997)). The Eighth Circuit,

however, cautioned that its rejection of the *per se* rule "should not be understood as

limiting the bankruptcy courts' authority to deny such requests in the appropriate

circumstances," but stressed that courts should not "exclusively rel[y] on the fact that

a creditor filed its motion after its complaint as a basis for denying meritorious

derivative actions." 540 F.3d at 904. In particular, the court warned that bankruptcy

courts:

> should not deny a motion for retroactive standing simply because it was
> filed after the statute of limitations has run. So long as the creditor (or
> creditors' committee) files its proposed derivative complaint within the
> applicable statute of limitations period, the bankruptcy court should
> evaluate both whether a retroactive grant of standing is proper and the
> merits of the proposed derivative action. In such cases, however, the
> bankruptcy court should be wary of denying retroactive standing when
> the proposed derivative complaint has merit.

540 F.3d at 904 n.14.

The Seventh Circuit has not directly addressed the issue of retroactive

authorization for a creditor to commence a derivative action in bankruptcy. However,

in the context of a request to retroactively approve employment of counsel, the

Seventh Circuit has held that the general rule for extension of time, Bankruptcy Rule

9006(b)(1), applies and the movant must show "excusable neglect" for the failure to

seek advance approval. *In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994). Like for

authorization to derivatively pursue an action, the statute requiring approval of

employment is silent as to whether approval of employment "must precede the

engagement," but policy generally warrants prior approval. For employment, the

policy in favor of prior approval is that "it permits close supervision of the

administration of an estate, wards off 'volunteers' attracted to the kitty, and avoids duplication of effort." *Id.* (citing *In re Grabill Corp.*, 983 F.2d 773, 777 (7th Cir. 1993)).

At least one bankruptcy case from within this district has granted retroactive authorization to a creditors committee to pursue a fraudulent conveyance claim. *Official Committee of Unsecured Creditors of SGK Ventures, LLC v. NewKey Group, LLC (In re SGK Ventures, LLC)*, 521 B.R. 842 (Bankr. N.D. Ill. 2014). The *SGK Ventures* decision did not discuss *Singson* or Bankruptcy Rule 9006(b). Briefly citing the Eight Circuit's decision in *In re Racing Services* and what it categorized as the "great majority of decisions," the decision instead reached the conclusion that a court "has discretion to grant retroactive derivative standing." 521 B.R. at 852. The *SGK Ventures* decision did not elaborate on the appropriate standard for application of discretion and instead only gave as "reasons for allowing this discretion" that: "(1) if the request for leave is otherwise appropriate, dismissing a complaint for failure to seek leave in advance may simply result in a refiling of both the request for leave and the complaint, generating unnecessary expense and delay and (2) the party that failed to timely obtain derivative standing may have been acting in good faith under an impending deadline for filing its complaint." 521 B.R. at 852 (internal citation omitted).

Here, because the statute of limitations for at least certain of the claims asserted in the complaint expired subsequent to the filing of the complaint, dismissal and a refiling are more than a mere technicality creating expense and delay. While Better Hearing alleges in a conclusory manner in its response to the motion to dismiss

that it acted in good faith, it has not demonstrated this.  Nor has it demonstrated that its failure to act sooner was due to excusable neglect.  Thus, even if a retroactive grant of derivative standing is ever appropriate, Better Hearing has not shown that it is warranted here.

Better Hearing focuses its argument only on the adverse effects of not being able to pursue the action – a potential loss of the ability for either it or the Reorganized Debtor to pursue its action against Mr. Hovis – and not on its own action or inaction that caused this situation.  This is not sufficient.  While noting the general risk that a debtor-in-possession may fail to pursue avoidance actions against preferred creditors, the Seventh Circuit has found such danger alone "is not great enough to justify us in ignoring clear statutory language [or] grave enough to justify judicial surgery on the statute [because] creditors are not powerless to prevent the running of the statute of limitations." *Fogel v. Shabat* (*In re Draiman*), 714 F.3d 462, 466 (7th Cir. 2013).  Specifically, if the debtor-in-possession is refusing to pursue an action, its creditors may seek to convert the case or have a chapter 11 trustee appointed. *Id. Draiman* does state that the statute of limitations in 11 U.S.C. §546(a) "is subject to equitable tolling [such that if] without any laxity or other fault the creditors can't procure the appointment of a permanent trustee within the statutory deadline, the doctrine of equitable tolling would permit an extension." *Id.* at 466.  Better Hearing, however, has failed to demonstrate that it has acted "without laxity or other fault."  Instead, the record is clear that Better Hearing did not seek to convert the case or request the appointment of a trustee or request authority to file the

16

complaint on the estate's behalf before it commenced this adversary proceeding.[8]

The Complaint itself does not contain any allegations that Better Hearing demanded the Debtor commence an action against Mr. Hovis. In its response to the motion to dismiss, Better Hearing appears to concede that it never made such a demand, stating that the "facts show that any explicit demand by BHL for the Debtor to bring a cause of action against Hovis would have been futile." (ECF No. 28, pg. 10.) Thus rather than actually make a demand, Better Hearing seems to admit that it merely assumed that the Debtor would not bring suit against Mr. Hovis because of Better Hearing's conclusion that the "Debtor was controlled by Hovis at all times." (ECF. No. 10.)

Better Hearing also suggests in the response that it was led to believe that the Debtor would enter into a tolling agreement with Mr. Hovis. But in support of this suggestion Better Hearing simply attaches a copy of a purported e-mail without foundation which contains a statement, purportedly made by Hearing Help's counsel to Better Hearing's counsel on June 29, 2016, that "HHE will be proposing a Tolling Agreement to the Hovis Parties to toll any and all claims which HHE may have against them."[9]   Even were the Court to accept the exhibit to the response as

---

[8] Another creditor, CAN Capital Asset Servicing, Inc. did file a motion to appoint a trustee on November 20, 2015 (Case No. 14-bk-82161, ECF No. 237.) However, that motion made no reference to transfers or amounts owing by Mr. Hovis. Instead, it sought appointment of a trustee or examiner "so that the interests of all creditors [could] be protected from the disputes raging between [the Debtor-in-Possession] and [Better Hearing]," alleging that Better Hearing's claim should be treated as equity, not a claim. (Id. ¶¶ 1-2.) Rather than support the CAN Capital motion, Better Hearing filed a written objection to the motion to appoint trustee on December 14, 2015. (Case No. 14-bk-82161, ECF No. 252.) The motion was eventually withdrawn by CAN Capital on June 8, 2016. (Case No. 14-bk-82161, ECF No. 370.)

[9] In addition to being without foundation and possibly containing inadmissible hearsay, it is difficult to discern with any confidence from the e-mail who the author of this or other sentences are.

admissible and having any evidentiary weight, it simply states that the Debtor would *propose* a tolling agreement, not that it had actually entered into one or that *Mr. Hovis* had agreed. Also, rather than demonstrate that Better Hearing had made any demand, the e-mail from the Debtor's counsel appears to merely respond to objections to Better Hearing's proposed disclosure statement. Thus, Better Hearing has provided no evidence that its failure to seek prior approval was caused by excusable neglect or that the Debtor-in-Possession had "unjustifiably refuse[d] a demand to pursue the action" Better Hearing now seeks to pursue. Although the Court offered the parties the opportunity to present evidence on this point, Better Hearing explicitly declined to do so on the record.

Since the claims alleged in the Complaint are within the sole authority of the trustee or debtor-in-possession to assert and Better Hearing has failed to demonstrate that it has been or should be given derivative authority to pursue them, Better Hearing fails to state a claim for relief for which it has authority to assert. Accordingly, the Complaint will be dismissed.

*Motion to Substitute.*

In an alternate attempt to save the Complaint, the Reorganized Debtor, now controlled by Better Hearing, seeks to substitute as the "real party in interest," asserting as authority Fed. R. Civ. P. 17(a)(3) and 15(a)(2) as incorporated by Fed. R. Bankr. P. 7017 and 7015. As discussed above, the Debtor-in-Possession is the proper party to assert these claims. The issue however, is whether Rules 17 and 15 are an appropriate vehicle for a proper party who failed to bring a timely action to adopt an

action timely filed by an improper party.

Pursuant to Fed. R. Civ. P. 17(a)(1), an "action must be prosecuted in the name of the real party in interest." However, the "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Id.* Thus, generally speaking, under Rule 17(a)(3), "the original flaw" of the wrong party filing the action "does not doom the litigation: it is subject to cure." *Akbar v. Calumet City*, 632 Fed. Appx. 868, 871 (7th Cir. Dec. 14, 2015).

However, courts have "have interpreted [Rule 17(a)(3)] in light of the Advisory Committee Notes, which state that 'this provision was added simply in the interests of justice and is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.'" *Rideau v. Keller Indep. School Dist.*, 819 F.3d 155, 165 (5th Cir. 2016) (citing *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (quoting Fed. R. Civ. P. 17(a) Advisory Committee Notes, 1966 Amendment) (internal quotation marks omitted)). Ratification thus is "applicable only when the plaintiff brought the action in her own name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult." *Rideau*, 819 F.3d at 165. *See also Wieburg*, 272 F.3d at 308 (collecting cases); 6A Wright & Miller § 1555 (3d Ed.) ("Rule 17(a)(3) is designed to avoid forfeiture and injustice when an understandable mistake

19

has been made in selecting the party in whose name the action should be brought, and, as illustrated by the cases cited in the note below, numerous courts have allowed substitution to achieve that result."). In discussing types of "understandable mistake," the Fifth Circuit has stated that a "good-faith, nonfrivolous mistake of law triggers Rule 17(a)(3) ratification, joinder, or substitution." *Rideau v. Keller Indep. School Dist.*, 819 F.3d 155, 167 (5th Cir. 2016) (citing *Scheufler v. Gen. Host Corp.*, 126 F.3d 1261, 1270 (10th Cir. 1997)).

In contrast, "when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed." 6A Wright & Miller § 1555 (3d Ed.); *Rideau*, 819 F.3d at 165-66. As stated by the Eleventh Circuit:

> Rule 17 was not promulgated to allow lawyers to file placeholder actions ([or so-called] 'protective filings') to keep a limitations period open while they investigate their claims and track down the proper parties. If we were to adopt the approach plaintiffs' counsel propose—and thus compel courts to allow substitution any time the real plaintiff is waiting in the wings - we would read this limitation out of existence and enable, in fact encourage, lawyers to file complaints without proper authorization or investigation. Such a result would run counter not only to the policy underpinnings of Rule 17, but also those of Rule 11, and would, in a very real sense, obstruct the district courts' ability to administer justice to litigants waiting for their cases to be heard.

*In re Engle Cases*, 767 F.3d 1082, 1113-14 (11th Cir. 2014).

The Seventh Circuit, too, has looked to whether "an understandable mistake has been made" in analyzing whether permitting substitution or ratification under Rule 17 or relation back under Rule 15 is necessary to avoid forfeiture or injustice. *Fed. Deposit Ins. Corp. v. Meyer* (*In re Meyer*), 120 F.3d 66, 69 (7th Cir. 1997) (citing

*Wadsworth v. U.S. Postal Serv.*, 511 F.2d 64, 66 (7th Cir. 1975)). In *Meyer*, the Court of Appeals found that a bank which had assigned a loan to its subsidiary had committed an "understandable mistake" in filing a non-dischargeability complaint in its own name. That being the case, the Seventh Circuit concluded that the bankruptcy court was correct to permit the true party in interest to substitute as plaintiff despite the fact that the time to object to dischargeability of a debt under Bankruptcy Rule 4007(c) had subsequently lapsed. As the court explained:

> The loan *looked* as if Commercial Finance still owned it. Commercial Finance still retained the obligation to service the loan. It created and maintained the pertinent documents. And Commercial Finance was the named creditor in the Arizona default judgment of September 23, 1992. As a practical matter, when the wrong entity files for an extension of time concerning a specific debt, this kind of clerical confusion is most likely afoot. Someone in control of several companies will have mixed up to whom the debt is owed. The companies are likely to be in privity with one another, and as here, receipt of the loan payments and administration of the loan may have been split.

120 F.3d at 69 (internal citations omitted).

But here, just as Better Hearing failed to demonstrate that its failure to timely seek authorization to pursue the action derivatively was due to excusable neglect, so the Reorganized Debtor has failed to show that Better Hearing's filing of the complaint rather than the Debtor-in-Possession was an "understandable mistake," despite being afforded the opportunity to do so. The Reorganized Debtor, now controlled by Better Hearing has not, for example, suggested that the pre-confirmation Debtor-in-Possession desired or authorized Better Hearing to file the action when the Complaint was filed. Nor has the Reorganized Debtor demonstrated that Better Hearing reasonably believed it was authorized by the statute or the Court

21

to file the action. Nor is this a situation of a creditor unaware of a pending bankruptcy who files a fraudulent transfer action in state court. *Cf. e.g. Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 984 (N.D. Ill. 2014) (where Chapter 7 debtor filed a complaint asserting a claim that constituted property of the bankruptcy estate without scheduling the claim as an asset or otherwise informing the Chapter 7 trustee, it was appropriate to permit the Trustee to substitute "in light of the aims of Rule 17(a)(3)"). Better Hearing filed the complaint *in the bankruptcy case,* expressly stating that it was filed *on behalf of the bankruptcy estate*, citing as authority Bankruptcy Code sections which clearly authorize only a "trustee" to pursue such actions.

This case, therefore, bears some similarity to *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553 (3rd Cir. 2008), where the Third Circuit affirmed the District Court's dismissal order on statute of limitation grounds and refusal to permit ratification of the complaint by the party in interest under Rule 17(a)(3). In *Gardner,* a tenant had brought an action against the homeowner's insurer, seeking to compel the insurer to defend or indemnify the homeowner in connection with negligence claims she asserted against him. She filed the suit in the homeowner's name without the homeowner's authorization. The fact that the homeowner later assigned his claim to the tenant was to no avail, since it was not assigned until after the complaint was filed and after the limitations period had expired. Quoting a Ninth Circuit opinion, the court reasoned that:

> Rule 17(a) does not apply to a situation where a party with no cause of
> action files a lawsuit to toll the statute of limitations and later obtains

22

a cause of action through assignment. Rule 17(a) is the codification of the salutary principle that an action should not be forfeited because of an honest mistake; it is not a provision to be distorted by parties to circumvent the limitations period.

*Gardner*, 544 F.3d at 563 (quoting *United States ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070, 1075 (9th Cir. 1989) (finding that "[subcontractor's] assignment to the [plaintiffs] of its claim against CMA cannot ratify the [plaintiffs'] commencement of suit on a claim which theretofore did not exist.")). Similarly, Rule 17(a) does not apply to this situation where Better Hearing filed the complaint to toll the statute of limitations and later gained control of the Reorganized Debtor to cause it to seek to ratify or substitute as plaintiff in the Complaint.

Nor has the Reorganized Debtor shown that Better Hearing's filing of the Complaint without authorization was anything other than an intentional step to avoid the statute of limitations. In *Bowen v. Peregrin (In re Peregrin)*, the court found that the "law very clearly holds that a Chapter 7 debtor has no ability to pursue pre-petition legal claims, which by operation of law become property of the bankruptcy estate" and based on this clarity found that "Rule 17(a)(3) therefore is irrelevant and no bar to dismissal" since it did "not present a situation where determining the proper plaintiff was difficult and Bowen's mistake was excusable." No. 12-A-1464, 2012 WL 5939266 (Bankr. N.D. Ill. Nov. 28, 2012). Here, too, it should have been readily apparent to Better Hearing – who was involved in the bankruptcy case since its inception and who has been represented by capable bankruptcy counsel – that Better Hearing required authorization to pursue the claims asserted in the complaint. Indeed, in their joint response to the motion to dismiss, Better Hearing

23

and the Reorganized Debtor admit that Better Hearing filed "this adversary proceeding only in light of an imminent expiration of the statute of limitations." (ECF No. 28, p. 11.)

In any event, despite being given ample opportunity to respond and being offered the opportunity to present evidence, neither Better Hearing nor the Reorganized Debtor have offered admissible evidence to show that Better Hearing in good faith and through an honest mistake believed that it was authorized to file the Complaint when it did. Although they note the difficulty Better Hearing was in at the time it filed the Complaint due to the impending statute of limitations deadline, they offer little to no explanation – other than suggesting without evidentiary support that Better Hearing believed at the end of June 2016 that Mr. Hovis *might* enter into some vague type of tolling agreement – for why Better Hearing took no action before filing the complaint on the eve of the deadline. According to the bankruptcy case docket, Better Hearing had been at odds with the Debtor-in-Possession at least as early as March 18, 2016, when Better Hearing filed its competing plan of reorganization. Better Hearing's plan expressly contemplated its partial funding through avoidance actions and other litigation against Mr. Hovis. The disclosure statement for that plan criticized the Debtor's competing plan for proposing releases in favor of Mr. Hovis. Yet, other than by raising its unsupported allegation that it was led to believe by the Debtor-in-Possession that Mr. Hovis might enter into some form of tolling agreement, Better Hearing and the Reorganized Debtor have failed to address, let alone explain, why Better Hearing waited until July 13, 2016 – the day

before the expiry of the statute of limitations – to file the complaint in its own name and without court authorization.

Accordingly, even if there is authority for a court to substitute a reorganized debtor as a plaintiff, Better Hearing and the Reorganized Debtor have failed to demonstrate that such relief is warranted in this case. Because the Court denies the Reorganized Debtor's motion to substitute as plaintiff the Court also must deny at this time and without prejudice the request to amend the complaint.

## CONCLUSION

Accordingly, the Reorganized Debtor's motion to substitute as plaintiff will be DENIED and Mr. Hovis's motion to dismiss the adversary will be GRANTED. Separate orders shall be entered giving effect to the determinations reached herein.

DATE: September 29, 2017                ENTER:

_____
Thomas M. Lynch
United States Bankruptcy Judge